UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YONGFU ZHENG, | |
| Plaintiff, | |
| -v- | CIVIL ACTION NO. 23 Civ. 5693 (SLC) |
| | **OPINION & ORDER** |
| MERRICK B. GARLAND, | |
| Defendants. | |

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

On September 11, 2020, Plaintiff Yongfu Zheng ("Zheng"), a resident of the People's Republic of China, applied for asylum (the "Application") in the United States. (ECF No. 1 (the "Complaint") ¶ 10). As of July 2, 2023, his Application had not been adjudicated, (see id. ¶ 11), and he filed this action under the Mandamus Act, 28 U.S.C. § 1361, and Administrative Procedures Act, 5 U.S.C. §§ 555 and 701 et seq. ("APA"), seeking: (1) declaratory relief and (2) an order compelling Attorney General Merrick B. Garland; Secretary of Homeland Security Alejandro Mayorkas; United States Citizenship and Immigration Services ("USCIS") Director Ur Mendoza Jaddou; and Associate Director of Refugee, Asylum and International Operations Ted H. Kim (collectively, the "Government") to render a decision. (ECF No. 1 at 4).

The Government now moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the Complaint does not allege any basis for relief under the Mandamus Act or the APA. (ECF Nos. 12–15 (the "Motion")). Despite the Court's warning to Zheng on September 28, 2023 that a failure to respond to the Motion would result in

the Court treating it as unopposed (see ECF No. 19), Zheng has not opposed the Motion or otherwise communicated with the Court.  For the reasons set forth below, the Motion will be GRANTED, and this action will be dismissed.

## II. BACKGROUND

### A. Statutory Background

#### 1. The Asylum Application and Review Process

The Immigration and Nationality Act ("INA") permits noncitizens present in the United States to apply for asylum.  8 U.S.C. § 1158(a)(1).  To qualify for asylum, an applicant must establish either past persecution or a well-founded fear of future persecution on the basis of his or her race, religion, nationality, membership in a particular social group, or political opinion.  Id. at §§ 1101(a)(42)(A); 1158(b)(1)(B)(i).  Asylum provides a non-citizen with ongoing legal status in the United States, a pathway to applying for legal permanent residence, and the ability to petition for derivative asylum status for immediate family members.  See id. at §§ 1158(b)(3)(A); 1158(c)(1)(A); 1159(b).  While an asylum-seeker's application is pending, he may apply for authorization to work legally in the United States.  8 C.F.R. § 208.7(a)(1); see also Alaei v. Holder, No. 15 Civ. 8906 (ODW), 2016 WL 3024103, at *3 (C.D. Cal. May 26, 2016) ("Plaintiff can legally live and work in the United States pending adjudication of her application.").[1]

Section 1158(d) directs the Attorney General to establish a procedure to evaluate asylum applications.  Id. at § 1158(d)(1).  The statute provides that, absent exceptional circumstances, government officials should (1) conduct an initial interview within 45 days of the filing of an asylum application, and (2) render a final decision within 180 days of the application.  Id. at

---

[1] Unless otherwise indicated, internal citations and quotation marks are omitted from case citations.

§ 1158(d)(5)(A)(ii)–(iii).  It further provides, however, that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."  Id. at § 1158(d)(7).

USCIS may provide an expedited decision as to an asylum application if the applicant can show he or she faces, inter alia, "[s]evere financial loss" or can establish "[e]mergencies or urgent humanitarian situations" requiring an accelerated adjudication.  USCIS, EXPEDITE REQUESTS, https://www.uscis.gov/forms/forms-information/how-make-expedite-request    (last    visited Aug. 14, 2024).  Filing a request for an expedited decision does not, however, guarantee an applicant that relief; rather, USCIS has "sole discretion" to decide whether to grant or deny a request.  Id.; see Ruan v. Wolf, No. 19 Civ. 4063 (ARR), 2020 WL 639127, at *2, 2020 WL 639127, at *2 (E.D.N.Y. Feb. 11, 2020) ("The website appears to indicate that there is no opportunity to appeal or receive judicial review of denials of expedite requests.").

## 2.  The "Last-In First-Out" Review System [2]

USCIS's current asylum interview scheduling procedure prioritizes applications on a "last-in first-out" ("LIFO") basis; i.e., the agency schedules asylum interviews for the most recently filed asylum cases before older applications.  (ECF Nos. 14 ¶ 17; 15 ¶ 10).  The LIFO system seeks to "reduce[ ] the incentive engendered by the [application] backlog to file non-meritorious asylum

---

[2] The facts in this section derive from both affidavits submitted with the Motion and information gleaned from government websites.  See Perez v. Ahlstrom, No. 10 Civ. 1299 (VLB), 2011 WL 2533801, at *2 (D. Conn. June 27, 2021) ("[T]he Court may also properly consider matters of which judicial notice may be taken, . . . including information on an official government website."); Crespo v. S.C. Johnson & Son, Inc., 394 F. Supp. 3d 260, 266 n.3 (E.D.N.Y. 2019) (taking "judicial notice of the [Environmental Protection Agency] website and the documents maintained on that site" in evaluating a motion to dismiss).

applications just to obtain work authorization."  (ECF No. 14 ¶ 17); see also USCIS, Affirmative Asylum Interview Scheduling, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last visited Aug. 14, 2024) ("The aim is to deter individuals from using the asylum backlog solely to obtain employment authorization by filing frivolous, fraudulent, or otherwise non-meritorious asylum applications.").

### B. **Factual Background** [3]

Zheng is a Chinese citizen residing in the United States.  (ECF No. 1 ¶¶ 6, 10).  On September 11, 2020, he filed the Application, alleging fear of persecution were he to return to China.  (Id. ¶ 10; ECF No. 1-1 at 2).  On November 18, 2020, he attended an appointment to provide his biometrics.  (ECF Nos. 1 ¶ 10; 1-1 at 4).  As of July 2, 2023—the date he filed the Complaint—USCIS had not adjudicated the Application despite Zheng having "exhausted all administrative remedies available to [him]."  (ECF No. 1 ¶¶ 11–13); (see also ECF No. 1-1 at 6).

### C. **Procedural Background**

On July 2, 2023, Zheng filed the Complaint, which raises two claims—one under the Mandamus Act (the "Mandamus Claim") and a second under the APA (the "APA Claim").  (ECF No. 1 at 1–4).  On September 6, 2023, the Government filed its Motion.  (ECF Nos. 12–15).  The parties then consented to Magistrate Judge jurisdiction for all purposes.  (ECF Nos. 17–18).

On September 28, 2023, after Zheng failed to respond to the Motion, the Court issued an Order granting Zheng an extension of time—until October 5, 2023—to oppose the Motion and

---

[3] The facts in this section derive from the allegations in the Complaint, which the Court presumes to be true for purposes of deciding the Motion.  See Spoleto Corp. v. Ethiopian Airlines Grp., No. 21 Civ. 5407 (PAE), 2022 WL 329265, at *1 n. 1 (S.D.N.Y. Feb. 3, 2022), aff'd, 2022 WL 17574469 (2d Cir. Dec. 12, 2022) (summary order).

warned him that his failure to do so would "result in the Court deeming the Motion unopposed and deciding the Motion as such." (ECF No. 19). To date, Zheng has neither filed an opposition nor requested additional time to do so.

### III. LEGAL STANDARDS

#### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). A court may properly refer to matters outside the pleadings when considering the existence of jurisdiction on a Rule 12(b)(1) motion. See Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1010–11 (2d Cir. 1986).

In a motion to dismiss pursuant to Rule 12(b)(1), "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001). A challenge to the legal sufficiency of jurisdiction is "based solely on the allegations of the complaint or the complaint and exhibits attached to it," and thus "plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." Katz v. Donna Karan Co., LLC, 872 F.3d 114, 119 (2d Cir. 2017). But when a defendant makes a factual challenge, the defendant can "proffer[ ] evidence beyond the plaintiffs' pleading." Id. (cleaned up). Plaintiffs opposing such a motion must "come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in their pleading if the evidence proffered by the defendant

is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." Id. (cleaned up).

### B. **Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, does not apply to legal conclusions. See Iqbal, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

## IV. DISCUSSION

Zheng invokes the Mandamus Act and the APA in support of his request that the Government decide the Application. (ECF No. 1 at 1–4). In the Motion, the Government argues that (1) the Court lacks subject matter jurisdiction over the Mandamus Claim (ECF No. 13 at 15–16), and (2) the Complaint fails to state a claim under the APA (id. at 16–19). As explained below, the Government's arguments are meritorious. In addition, because the Complaint fails to state a claim and the Court will grant the Motion, Zheng is not entitled to the declaratory relief he seeks.

### A. __The Mandamus Claim__

In support of the Mandamus Claim, Zheng alleges that "Defendants have breached their duty to act on [the] Application and the Court may compel Defendants to perform their duty." (ECF No. 1 ¶ 19).  Defendants assert that the Court lacks jurisdiction to consider the Mandamus Claim.  (ECF No. 13 at 15–16).

#### 1. __Legal Standard__

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "The action that the plaintiff seeks to compel must be subject to positive command, plainly described, and free from doubt."  Keane v. Chertoff, 419 F. Supp. 2d 597, 599 (S.D.N.Y. 2006).  To obtain relief, a plaintiff must allege that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available."  Benzman v. Whitman, 523 F.3d 119, 133 (2d Cir. 2008); see Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989).

#### 2. __Application__

To determine whether Zheng has "a clear right to the relief sought," Benzman, 523 F.3d at 133, the Court must determine the specific relief he seeks.  The Complaint is ambiguous, asking the Court to "[c]ompel [the Government] to perform the duties owed to Plaintiff."  (ECF No. 1 at 4).  This language permits two possible interpretations:  that Zheng seeks an order compelling the Government to (1) decide the Application immediately, or (2) act within the timeframe set by Congress in Section 1158(d)(5).  The Complaint is deficient under either interpretation.

### a. __Immediate Adjudication__

Because Zheng filed the Complaint more than three years after he filed the Application, he cannot be seeking an order compelling the Government to act within the 180-day timeline set by Section 1158(d)(5); more than 180 days had already passed when he initiated the action.  See 8 U.S.C. § 1158(d)(5); (ECF No. 1 ¶ 12).  Zheng is more likely requesting an order compelling the Government to render a decision as to the Application immediately.  The Complaint, however, does not identify any statutory basis showing that Zheng has a right this relief, nor is the Court aware of any.  Consequently, the Court concludes that Zheng does not have any "clear right to the relief requested"—immediate adjudication of the Application—and is not entitled to mandamus relief in the form of an order directing the Government to act on the Application without delay.  See Xu v. Cissna, 434 F. Supp. 3d 43, 56 (S.D.N.Y. 2020) (denying mandamus relief where "Plaintiff [did] not cite to a specific statute that she believe[d] entitle[d] her to a right to immediate adjudication" of her asylum application).

### b. __Section 1158(d)(5)'s Timeframe__

To the extent Zheng seeks an order requiring the Government to act within the timeframe stated in Section 1158(d)(5), the Complaint equally fails to identify a basis for relief.  Although Section 1158(d)(5) does set an aspirational 180-day timeline for the adjudication of asylum applications, it also expressly disclaims any private right of action, undermining any potential basis for relief under the Mandamus Act.  See 5 U.S.C. § 1158(d)(7) ("Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.").  Furthermore, the Government "do[es] not owe Plaintiff a duty to adjudicate [the]

[A]pplication within the time frames provided in § 1158(d)." Cissna, 434 F. Supp. 3d at 57.

Accordingly, "the Court lacks subject matter jurisdiction over [the] claim for mandamus relief."

Id.; see H.M.G. v. Johnson, 599 F. App'x 396, 387 (2d Cir. Apr. 9, 2015) (summary order) (affirming

dismissal of mandamus claim for lack of subject matter jurisdiction where petitioner had

"identified neither a clear right to relief nor a plainly defined and peremptory duty on the part of

the federal agency respondents").

*       *       *

The Court therefore dismisses the Mandamus Claim.

**B. The APA Claim**

In the APA claim, Zheng asserts that "Defendants have failed to correctly process and

adjudicate the [ ] Application [ ], without a known reason, for an unreasonable period of time."

(ECF No. 1 ¶ 18). The Government asserts that the Complaint fails to allege facts sufficient to

show that its delay in adjudicating the Application has been unreasonable. (ECF No. 13 at 16–

19).

**1. Legal Standard**

The APA provides that, "within a reasonable time, each agency shall proceed to conclude

a matter presented to it." 5 U.S.C. § 555(b). Courts are permitted to "compel agency action

unlawfully withheld or unreasonably delayed," except where "statutes preclude judicial review"

or "agency action is committed to agency discretion by law." Id. at §§ 701(a)(1)–(2); 706(1).

"[T]he passage of time cannot, standing alone, support [a claim for unreasonably delayed

administrative action]." Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005). Rather,

determination of whether a delay is unreasonable is "a complicated and nuanced task requiring

consideration of the particular facts and circumstances before the court." Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003).

To determine the reasonableness of a delay for purposes of an APA claim, courts apply the following factors originally set forth in Telecommunications Research & Action Center v. Federal Communications Commission, 750 F.2d 70 (D.C. Cir. 1984) (the "TRAC Factors"):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Telecomms. Rsch. & Action Ctr., 750 F.2d at 80; see Boussana v. Johnson, No. 14 Civ. 3757 (LGS), 2015 WL 3651329, at **8–9 (S.D.N.Y. June 11, 2015) (applying TRAC Factors in assessing reasonableness of government's delay of green card application adjudication); L.M. v. Johnson, 150 F. Supp. 3d 202, 207 (E.D.N.Y. 2015) ("In cases where the petition is seeking to compel action by immigration authorities, courts utilize the six-factor test articulated in [TRAC] to determine whether relief under the APA is warranted.") (quoting Hoo Loo v. Ridge, 04 Civ. 5553 (DLI), 2007 WL 813000, at *4 (E.D.N.Y. Mar. 14, 2007)).

### 2. Application

Applying the TRAC Factors, the Court concludes that the Complaint fails to allege that the Government has unreasonably delayed adjudication of the Application.

### a.  Rule of Reason

As noted above, USCIS considers asylum applications under the LIFO policy, the goal of which is to "deter individuals from using the asylum backlog solely to obtain employment authorization by filing frivolous, fraudulent, or otherwise non-meritorious asylum applications." AFFIRMATIVE ASYLUM INTERVIEW SCHEDULING, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last visited Aug. 14, 2024).   Courts addressing claims like Zheng's have found that the LIFO policy constitutes a "rule of reason that satisfies the first TRAC [F]actor."  Cissna, 434 F. Supp. 3d at 53–54; see also Liu v. Wolf, No. 19 Civ. 410 (PGG), 2020 WL 2836426 at *8 (S.D.N.Y. May 30, 2020); Zhu v. Cissna, No. 18 Civ. 9698 (PA), 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019).  The Court agrees and finds that the first TRAC Factor is met.

### b.  Congressional Guidance

The second TRAC Factor directs courts to consider whether Congress has provided a timetable that could supply content for the rule of reason.  Telecomms. Rsch. & Action Ctr., 750 F.2d at 80.  Through Section 1158(d)(5), Congress has provided a timeframe for USCIS to consider asylum applications, but did not make it mandatory and did not "create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."  8 U.S.C. § 1158(d)(7); see also Zhang v. Wolf, No. 19 Civ. 5370 (DLI), 2020 WL 5878255, at *5 (E.D.N.Y. Sept. 30, 2020) (observing that Section 1158(d)(5) includes the qualifying phrase "absent exceptional circumstances," "suggest[ing] that Congress intended that the timeline not apply while the USCIS is dealing with an exceptional level of asylum applicants").  Thus, the second TRAC Factor does not weigh strongly in the Court's

analysis.  See Cissna, 434 F. Supp 3d at 53 ("[T]he Court does not ascribe much significance to [Section 1158(d)'s] timetable."); Liu, 2020 WL 2836426, at *9 ("Given Congress's decision that the schedule it set forth would not be binding, this Court cannot give that schedule binding effect here.").

### c.  Interests Prejudiced by Delay

The third and fifth TRAC Factors, which courts often analyze together,[4] consider the nature and extent of the interests prejudiced by delayed adjudication of a request for administrative action.  Telecomms. Rsch. & Action Ctr., 750 F.2d at 80.  These factors weigh against Zheng because, although the Government concedes he has an "interest in having his asylum application adjudicated" (ECF No. 13 at 17–18), the Complaint does not allege that the delay has negatively impacted Zheng's health or welfare.  (See ECF No. 1).  In the absence of such allegations, the Court finds that the third and fifth TRAC Factors resolve in the Government's favor.  See Xu, 434 F. Supp. 3d at 54 (finding third and fifth TRAC Factors resolved in government's favor where "Plaintiff d[id] not allege facts establishing a risk to human health and welfare"); Zhang, 2020 WL 5878255, at *5 ("Significantly, Plaintiffs have not alleged that they have suffered any injury to their health or welfare . . . . Accordingly, Plaintiffs have failed to allege plausibly that the third and fifth TRAC factors weigh in their favor.").

---

[4] See, e.g., Zheng v. Garland, No. 22 Civ. 6039 (AMD), 2024 WL 333090, at *6 (E.D.N.Y. Jan. 29, 2024) (addressing third and fifth TRAC Factors together, observing that they each "concern the impact to human health and welfare and the nature and extent of the interests prejudiced by the delay"); Cissna, 434 F. Supp. 3d 43 at 53–54 ("Under the third and fifth TRAC factors, the Court looks to the nature and extent of the interests prejudiced by the delayed adjudication."); Boussana, 2015 WL 3651329, at *9 ("Courts generally analyze the third and fifth factors together.").

### d. **Effect of Expediting Review**

Finally, the fourth TRAC Factor provides that "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority." Telecomms. Rsch. & Action Ctr., 750 F.2d at 80. Assessing this TRAC Factor, courts have "refuse[d] to grant relief, even [when] all the other factors considered in TRAC favor[ed] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." L.M., 150 F. Supp. 3d at 213; see Xu v. Nielsen, No. 18 Civ. 2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) ("[T]he competing-priority issue is weighty. There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage . . . ."). On this basis, the Court concludes that the fourth TRAC Factor resolves in favor of the Government. See Chen v. Wolf, No. 19 Civ. 9951 (AJN), 2020 WL 6825681, at *6 (S.D.N.Y. Nov. 20, 2020) (concluding under similar circumstances that the fourth TRAC Factor "strongly favor[ed] Defendants").

\*       \*       \*

Because the TRAC Factors balance in favor of the Government and against Zheng, the Court concludes that the Complaint fails to state a claim under the APA that the Government's delay in adjudicating the Application has been unreasonable. This conclusion is consistent with the findings of other courts addressing lawsuits predicated on delays similar in length to Zheng's. See, e.g., Nielsen, 2018 WL 2451202, at *2 (concluding that plaintiff failed to state a claim for unreasonable delay where asylum application had been pending for under five years); Boussana, 2015 WL 3651329, at *8 ("Although 'courts have generally found delays of four years or less not

to be unreasonable[,] . . . many courts applying the TRAC factors have declined to find that delays exceeding six years are reasonable.'") (quoting <u>Islam v. Heinauer</u>, 32 F. Supp. 3d 1063, 1071–72 (N.D. Cal. 2014)); <u>Saleh v. Ridge</u>, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding that five-year delay in adjudication of asylum application was not an unreasonable delay); <u>Espin</u>, 381 F. Supp. 2d at 266 (concluding that plaintiff failed to state a claim for unreasonable delay where adjustment application had been pending for three years).

### C. Declaratory Relief

Finally, the Complaint requests a "[d]eclar[ation] that [the Government] ha[s] unreasonably delayed agency action." (ECF No. 1 at 4). Zheng is not entitled to declaratory relief because "some basis [for relief] must exist in another claim to accompany a declaratory judgment." <u>Zhang</u>, 2020 WL 5878255, at *7 (citing <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp</u>, 108 F.3d 17, 21 (2d Cir. 1997) ("The [Declaratory Judgment Act] is procedural in nature, and merely offers an additional remedy . . . in any case of actual controversy . . . provided that the claim for declaratory relief is pleaded in accordance with Rules 8 and 10 of the Federal Rules of Civil Procedure."). Because the Court finds that the Complaint fails to state a claim as to the APA Claim, Zheng is not entitled to a declaratory judgment.

### V. CONCLUSION

For the reasons stated above, the Government's Motion to Dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate ECF No. 12 and to close this case.

Dated:     New York, New York
           August 15, 2024

_____

**SARAH L. CAVE**
**United States Magistrate Judge**